UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NADRA DUNBAR**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 13-cv-872 (TSC) |
| | ) |
| **ELAINE CHAO**, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

*Pro se* plaintiff Nadra Dunbar brings this employment discrimination action against the National Highway Traffic Safety Administration ("NHTSA"), a component of the Department of Transportation ("DOT"). Dunbar alleges that NHTSA retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. The parties have reached an impasse with respect to discovery. The court will enter an order requiring that Dunbar timely and meaningfully fulfill her discovery obligations or face dismissal of this action.

### A.

After Dunbar filed this lawsuit, the court allowed her to amend her complaint several times until she filed her third and current operative amendment. ECF No. 39. During this early part of the litigation, Dunbar sent a letter and filings directly to the judge who formerly presided over this case. *See* ECF No. 10. Citing the court's local rules, the judge returned the documents to Dunbar, warning her that it was inappropriate to communicate directly with the court and instructing her to submit future filings to the Clerk's Office for docketing. *Id*.

The case was later transferred to the undersigned, who set a hearing on several fully briefed pending motions, including a motion on the proposed third amended complaint. 4/3/2015 Min. Order. In its order scheduling the hearing, the court warned the parties that no further briefing on the pending motions would be allowed absent leave of court, and later reiterated this warning in a subsequent order. *Id.*; 4/6/2015 Min. Order.

Despite this warning and the previous judge's warning about communicating directly with the assigned judge, Dunbar subsequently sent a memorandum to this court that included motions to amend her complaint. ECF No. 30; *see* 4/14/2015 Min. Order. The court denied Dunbar leave to file, as she had not sought leave to file the documents, which addressed the issues raised in the previously filed pending motions. 4/14/2015 Min. Order.

After the motion hearing, the court granted Dunbar permission to file a motion to amend her complaint but ordered her to refrain from any other filings without leave of court. 4/23/2015 Min. Order. Without seeking leave of the court, Dunbar subsequently sent an email to chambers purportedly responding to the court's post-hearing order. ECF No. 32; 4/28/2015 Min. Order. Once again, the court reminded Dunbar of its prior orders barring her from further filings without seeking leave of court, reminded her not to communicate directly with the court or the courtroom deputy, warned her to refrain from *ex parte* communications and informed her that failure to comply with court orders might result in sanctions, including dismissal of this action. *Id.*

After Dunbar filed her third amended complaint, NHTSA moved for summary judgment, relying on discovery conducted at the administrative level. The court granted the motion in part and denied in part. *See Dunbar v. Foxx*, 246 F. Supp. 3d 401, 421 (D.D.C. 2017). In its Opinion, the court admonished Dunbar for failing (as required by the local rules) to properly respond to NHTSA's Statement of Undisputed facts, for frequently failing to direct the court to

the exhibits supporting the factual allegations in her brief and, when she did cite to the record, for failing to direct the court to the specific information within each voluminous exhibit upon which she relied. *Id*. at 421 n.16. The court also warned Dunbar that continued failure to remedy these problems could result "in the court making a determination that she had failed to provide evidentiary support for those allegations." *Id*.

At a subsequent scheduling conference, the court informed the parties that if a discovery dispute arose, they were required to send a joint email to chambers outlining each party's position, after which the court would schedule a hearing or telephone conference to resolve the dispute, but in no event were the parties to file discovery motions without seeking leave of court. After the hearing, the court entered a scheduling order setting discovery deadlines and reiterating that the parties were required to notify chambers via joint email in the event of a discovery dispute, rather than file a motion. ECF No. 65.

During discovery, the court denied Dunbar leave to file multiple documents that contravened the court's local rules and/or contravened the court's rule regarding discovery disputes, and the court again reminded her about its discovery dispute rule. ECF No. 62, 66, 67. In one of those proffered filings, Dunbar claimed that her home telephone, cellular telephone and wi-fi connections had been "compromised." ECF No. 67. Two of the proffered filings involved a dispute over NHTSA's request that Dunbar sign a protective order relating to information that might fall under the Privacy Act. ECF Nos. 66-67.

Shortly thereafter, new counsel for NHTSA entered an appearance and served discovery requests on Dunbar. ECF No. 68; *see* ECF No. 71 at ECF p. 2. Defense counsel later sent an email to the court's courtroom deputy explaining that Dunbar had failed to respond to his discovery requests and his attempts to reach her. ECF No. 71 at ECF p. 2. Noting that he had

not copied Dunbar on the email, the court responded that same day, copying Dunbar and directing the parties to submit a single joint email explaining their discovery dispute. *Id*. at p. 1. Several minutes later, the new counsel responded, copying Dunbar, apologizing to the court, and explaining that he had already resent his earlier email to Dunbar, and that he would attempt to confer with her. *Id*.

Despite the court's prior directives that the parties confer and send a joint email, Dunbar sent a separate email, along with attached exhibits, to the courtroom deputy, complaining that she had previously sent NHTSA several written communications about its "outstanding discovery response" and asking the court to compel the agency to provide responses. ECF No. 70 at ECF pp. 1-2; *id*. at ECF pp. 4-5. Neither her email nor her attached exhibits provided any details about what discovery was purportedly missing. She also objected to responding to additional discovery requests or appearing for another deposition because she believed further discovery would be duplicative of the discovery proceedings undertaken at the administrative level before the agency and the Merit Systems Protection Board. *See id*. at ECF pp. 1-2.

In the attachments, Dunbar included email correspondence between herself and previous defense counsel in which she expressed a desire to meet and confer, but also stated that she was "not responsive to emails . . . given the lack of assurance of email and court communications from you and the court being sent to me." *Id*. at ECF p. 4. In an email to the courtroom deputy, Dunbar stated that she informed the new defense counsel that she did not open emails from NHTSA due to the "'compromised' nature of [her] email communications from the 'Agency,'" and therefore she preferred to receive written and telephonic communications. ECF No. 70 at ECF p. 5.

The courtroom deputy subsequently received a package from Dunbar containing additional copies of the discovery dispute emails and the court denied leave to file them. ECF Nos. 73-74; *see* ECF No. 70. The court again reminded Dunbar that she must refrain from sending correspondence to the court or the courtroom deputy, but instead must file materials with the Clerk of the Court. ECF No. 73. Finally, the court warned her that she had a responsibility to comply with the court's orders, local rules, and the Federal Rules of Civil Procedure and that any failure to do so might result in dismissal of this action. *Id*.

The docketed correspondence between the parties revealed the following with respect to their discovery disputes:

- By July 11, 2017, Dunbar and prior defense counsel had apparently exchanged several emails regarding NHTSA's discovery responses and the proposed protective order, but Dunbar expressed her preference that the parties communicate via telephone or postal mail. She also reiterated that she objected to the discovery responses, but did not explain her objections. ECF No. 70 at ECF pp. 4, 6.

- Dunbar and new defense counsel exchanged several emails, after which defense counsel sent NHTSA's discovery responses via email and unsuccessfully attempted to telephone Dunbar, who later explained that she had misplaced her cellular telephone for several days. Rather than telephone defense counsel after she located the telephone, she sent an email asking to discuss discovery matters and noted, without explanation, that she hoped the prior defense counsel had communicated her concerns. ECF No. 70 at ECF p. 12; ECF No. 72-1 at ECF p. 2.

- Defense counsel invited Dunbar to telephone him, but she responded with an email requesting an in-person meeting and defense counsel suggested the two communicate via telephone first. ECF No. 72-1 at ECF pp. 2, 4.

- Dunbar again requested an in-person meeting, to which defense counsel responded he had no objection to such a meeting but would like to speak with her via telephone first. ECF No. 72-1 at ECF p. 6. It does not appear that Dunbar agreed to a telephone call.

- Defense counsel subsequently sent Dunbar a letter and several emails regarding her lack of response to NHTSA's discovery requests, which had been sent several months prior, via email and hardcopy. He also noticed her deposition, invited her to call him

and invited her to participate in a joint submission to the court about their dispute—all to no avail.  ECF No. 70 at ECF p. 10; ECF 72-1 at ECF pp. 8, 10.

The court held a status conference regarding the discovery disputes, at which NHTSA represented that it had subsequently received discovery responses from Dunbar, but they consisted of references to docket entries and references to her Complaint.  The court explained to Dunbar the purpose of discovery and that she could not simply refer to docket entries unless those documents were actually responsive to discovery requests.  Otherwise, she was required to turn over documents—notwithstanding that she may have turned over the same documents at the administrative level—and do so "promptly."  To the extent she had objections, she must explain the precise nature of those objections.  Likewise, she was required to sit for a deposition even if she had previously been deposed during the administrative process.  The court reminded her once again that, despite her *pro se* status, she was required to comply with court rules and the Federal Rules of Civil Procedure.

The court also informed Dunbar that she could not insist that NHTSA communicate via telephone or in-person because email is a reasonable method of communication, as well as a reasonable method of exchanging discovery, and allows the parties to maintain a record of their communications.  The court recommended that she create a new email address if she believed her current email had been compromised and warned her that she could not "go off-line for a week or two weeks."

The court also explained the purpose of the protective order, that such orders were not unusual, and that Dunbar needed to articulate any specific objections to a protective order.  Finally, with regard to discovery disputes, the court once again explained that Dunbar must make a good faith effort to resolve discovery disputes before submitting any disputes to the court, but that if the parties reached an impasse, they were required to submit joint reports or emails.

Page 6 of 17

Moreover, because defense counsel had more access to computers and Dunbar had experienced problems with electronic communications, defense counsel would send her a draft email regarding the dispute, to which she could include her position and defense counsel would then file the report or send a joint email.  The court extended the discovery period and the parties were ordered to file a joint status report in thirty days and every thirty days thereafter.  Min. Entry, 10/25/17.

Defense counsel twice sent Dunbar a draft protective order and the parties spoke once, but it was not until defense counsel telephoned Dunbar and sent a fourth email that she responded by email.  ECF No. 77-1 at ECF pp. 7-9, 11, 14-15.  Her email contained no substantive objections regarding discovery or the protective order and, despite this court's admonition, she continued to request communication by telephone.  *Id*. at ECF pp. 14-15.  Although she had previously complained about NHTSA's discovery responses, she appeared to allege that she had not received either the discovery responses or discovery requests.  *Id*. at ECF p. 15.

Defense counsel sent Dunbar another copy of NHTSA's discovery responses and discovery requests, then followed up that same day with an email that included the package tracking number.  ECF No. 75 at 3; ECF 77-1 at ECF p. 14; *see id*. at ECF pp. 3-4 (mentioning the discovery responses and requests).  In his email, he again requested Dunbar's written objections to the protective order, noted that he would include them in the parties' upcoming joint status report and noted his availability for a telephone call.[1]  ECF 77-1 at ECF pp. 14, 29-30.  Dunbar responded later that day, insisting that the parties discuss their outstanding discovery

---

[1]  Dunbar does not have ECF filing privileges and therefore defense counsel must make any joint filings.

disputes via telephone, but promising to send a written explanation of her objections to the protective order.  ECF No. 77-1 at ECF pp. 23-24.

The following day (a Wednesday), defense counsel telephoned Dunbar, but did not reach her, and followed up shortly thereafter with an email regarding his availability for a telephone call.  *Id*. at ECF p. 18.  He explained that he was still awaiting her specific discovery/protective order objections, but also preparing a proposed joint status report that he would try to send to her by Friday so that she would have time to review it before the Monday due date.  *Id*.  He noted that he would be forced to conclude that she was not interested in signing the protective order if he did not receive her objections by Monday.  *Id*.

Rather than telephone defense counsel, on Friday Dunbar emailed him, indicating she had received the package from NHTSA and—for reasons that are unclear—complaining that the delivery driver had left the package at her front door.  ECF No. 77-1 at ECF pp. 3-4.  Dunbar also complained that she was having difficulty opening an enclosed DVD but commented that some of the hard-copy documents contained discovery requests "for which [I] have already responded," and she repeated her complaint that NHTSA's discovery responses were "vague" and "woefully insufficient and non-responsive."  *Id*. at ECF pp. 3-5.  Her email did not include her complaints about the protective order.  Several minutes later, defense counsel emailed Dunbar the proposed status report, explaining she could insert her version of events, or that she could file them separately.  *Id*. at ECF p. 3.

On Sunday, Dunbar sent an email in which she did not respond to defense counsel's request, claimed that she had been acting in good faith as evidenced by the parties' discussions held at the court immediately after the last status conference, as well as the parties' agreement to meet shortly thereafter.  ECF No. 77-1 at ECF p. 2.  But she admitted that the post-courthouse

meeting did not occur because she changed her telephone number and email contact before the meeting and claimed she had been unable to contact defense counsel to advise him of these changes prior to the planned meeting time. *Id*. Dunbar also reiterated her complaints about providing additional discovery stating, "You have never advised me specifically about what you needed differently than what I have provided to you and Mr. Hair previously." *Id*. at ECF p. 2.

With respect to the protective order, she claimed that she had submitted her objections to court at ECF Nos. "70 or 71." *Id*. at ECF p. 2. But ECF No. 71 is a filing by NHTSA and ECF No. 70 is a notice Dunbar filed (prior to the status conference) containing copies of emails—none of which contained substantive explanations regarding her objections. Finally, she promised to include her version of events in the proposed joint status report. *Id*. at ECF pp. 2-3.

Having failed to receive her input on the proposed report by Monday at 8:52 a.m., defense counsel sent Dunbar another email inviting her to add her perspective. ECF No. 77-1 at ECF p. 2. When he did not receive a response by 8:48 p.m., defense counsel filed the status report, explaining that the parties had not made progress on discovery due to Dunbar's failure to provide meaningful objections to the protective order, NHTSA's discovery responses, or its discovery requests due to her unwillingness to respond to his emails, as well as <u>frequent</u> changes in her email address and telephone number. ECF No. 75. Moreover, when the two were communicating via email, rather than reply to the latest email he had sent her, Dunbar would sometimes go back to an earlier email and send a reply, sometimes from a different email address, thereby disrupting the email "chain" and making it difficult to track the parties' communications. *Id*. at 3; *see* ECF No. 77-1 at ECF pp. 26-27. He also noted her failure to cooperate in filing a joint status report and noted that before he gave her his cellular telephone

number, Dunbar had attempted to reach him outside of business hours by telephoning his office once at 6 a.m. and once at 5:30 p.m.  ECF No. 75 at 2.

Defying the court's order, Dunbar filed a purported "joint" report and exhibits, totaling sixty-five pages, without addressing the outstanding discovery requests/response disputes.  ECF No. 76.  Dunbar did not proffer a proposed protective order, but instead complained that NHTSA's proposed order was "unnecessarily broad" and that it allowed NHTSA to designate a document as confidential, "without restriction" and without good cause.  *Id*. at 7.  She claimed this violated the First Amendment of the United States Constitution, as well as the policy providing the public with the right to access public records.  *Id.*

After receiving both parties' status reports, the court ordered them to file copies of emails supporting their arguments, ordered Dunbar to file a proposed protective order and warned the parties to refrain from including legal arguments in their filings.  12/1/2017 Min. Order.  Finally, the court warned them that any untimely filings or filings that did not comply with the court's order might be stricken without further notice.  *Id*.  NHTSA filed a timely notice containing its email evidence.  ECF No. 77.

Without seeking leave of court, Dunbar violated the court's order by filing her notice after the deadline and by including legal argument.  ECF No. 80.  Moreover, the emails she attached did not appear to contain communication "chains," but instead contained excepts from emails and/or text messages, thereby preventing the court from discerning the sequence of communications.  *Id*. at ECF pp. 7, 34-49.[2]  Finally, rather than proffer a proposed protective order, she asked that the court "craft a more focused" protective order.  ECF No. 80 at 3; *id.* at

---

[2]  Dunbar's filing also contained numerous irrelevant exhibits, including a copy of a screenshot from NHTSA's webpage.  *Id*. at ECF p. 26.

ECF p. 16.  Because Dunbar did not seek an extension of time in which to file this document and violated this court's order by including argument, the court will STRIKE this filing.  *See* 10/1/2017 Min. Order.

More than two months after the last hearing, defense counsel filed a timely status report, explaining that he had noticed Dunbar's deposition and sent her a letter outlining deficiencies in her responses to NHTSA's discovery requests.  ECF No. 78.  NHTSA claimed that since its last report, Dunbar had stated that she was unavailable for the deposition because she was unwell and had reiterated her argument that NHTSA's discovery requests were "overbroad" and "not responsive."  *Id.*  She also purportedly told NHTSA that she intended to address her deficient discovery responses.  *Id*.

Plaintiff submitted a timely status report in which she confirmed that she had been ill, but did not document any effort to reschedule the deposition, instead claiming that NHTSA had been recalcitrant.  ECF No. 79.  She claimed that only recently had she been able to access the DVD with NHTSA's responsive documents, but did not seek additional time to review it.  *Id*. at 3.

As to NHTSA's discovery requests, Dunbar first complained that the agency is the "keeper of the records" and that she had previously provided the Agency with discovery, apparently referring to discovery exchanged during the administrative process.  *Id*. at 4.  Nonetheless, citing "Exhibit z," she claimed that during this litigation she had "timely responded" to NHTSA's "duplicative and overburdensome, repeated discovery requests."  *Id.* at 2.  But the court is unable to locate an "Exhibit z," nor any other evidence in her attached sixty pages of exhibits that would indicate she responded to NHTSA's discovery requests.  Instead, Dunbar's exhibits included, *inter alia*, more email excerpts, irrelevant documents, and a brief

(reiterating her previous arguments) regarding the protective order. *Id*. at ECF pp. 14, 16-22, 33-34.

Because of the voluminous filings by both parties, the court stayed briefing on the discovery disputes. 12/28/17 Min. Order. Since that time, Dunbar has again changed her email address and/or telephone number countless times, *see* ECF Nos. 84, 86, 88, 93, 103, 113, 116, 119, 120, 124. On more than one occasion she claimed she was unable to receive telephone calls or email for extended periods of time and/or was forced to change her contact information, which she attributes to: "what appears to be *continual* cellphone and computer-hard drive unwelcomed, intrusions and manipulations," "inexplicable lack of access to previous email address," "security reason[s]," "electronic illegal obstructions and hindrances, via telephone and internet," "cellphone's telephone communications [that] are unwelcomed inaccessible and restricted," "telephone contact [which] has become unexpectedly disabled and [Dunbar] can no longer access, via retrieve or transmit telephone communications, nor access her yahoo emails," and "unwelcomed, intrusions, hinderances and obstructions." *See, e.g.*, ECF Nos. 85-87, 88-95, 99-101, 103.

NHTSA asks the court to compel Dunbar to meaningfully participate in discovery and Dunbar asks the court for a discovery order, a trial date and court appointed *pro bono* counsel. ECF Nos. 78, 104-109.

**B.**

Having considered the parties' filings, the history of this case, and this court's prior verbal and written warnings and orders, including this court's warnings to Dunbar regarding the consequences of her continued failure to follow this court's rules, and the local rules, and the Federal Rules of Civil Procedure, the court hereby reaches the following conclusions.

1. **Protective Oder**

"The Privacy Act safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records." *Bartel v. Fed. Aviation Admin.*, 725 F.2d 1403, 1407 (D.C. Cir. 1984). The purpose of NHTSA's proposed protective order is "to permit Plaintiff to discover information that may be relevant to this case without undermining the legislative purposes of the Privacy Act." ECF No. 79 (hereinafter "Protective Order") at ECF p. 26. Accordingly, the proposed order provides that information falling within the Privacy Act shall be marked "SUBJECT TO PROTECTIVE ORDER" and "may be used only for purposes of this litigation." Protective Order ¶ 3. It further provides that such information "shall not be disclosed by the Plaintiff or her representative(s) to the public or any other person or entity for any reason other than for purposes of litigation." *Id.* ¶ 4. When NHTSA designates information as protected under this order, "[t]he Plaintiff or other third party to this Order may challenge the Defendant's designation of particular information as Protected . . . by moving the Court to have the information made public or for other appropriate relief." *Id.* ¶ 7. This language dispels Dunbar's argument that the order provides NHTSA with the unfettered ability to designate documents as confidential.

Likewise, Dunbar's concern about public access to court records is unfounded because there are protections in place to prevent unauthorized or improper sealing of records. To the extent NHTSA attempts to file a designated document under seal, it must seek leave from this court. LCvR 5.1(h)(1) (requiring litigants to seek a court order before filing records under seal, absent statutory authority). And in determining whether to grant leave to file a document under seal, the court not only considers that "[t]he common-law right of public access to judicial records 'is a fundamental element of the rule of law,'" but also that this right "must yield when

Congress has spoken directly to the issue at hand." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127, 1129 (D.C. Cir. 2020) (citations omitted). Here Congress has spoken through the Privacy Act by limiting disclosure of certain records to the public.

Because the court finds nothing unusual, burdensome, or improper in the protective order, it will enter the protective order. *See* Fed. R. Civ. P. 26(c) (setting forth the requirements for protective orders).

### 2. NHTSA's Discovery requests

Despite countless requests from NHTSA, over the course of months, that she provide specific reasons for her objections to its discovery requests, along with this court's directive that she respond promptly to NHTSA's discovery requests, Dunbar has yet to provide meaningful responses or objections. The court hereby orders Dunbar to meaningfully and timely respond to those requests by May 1, 2023.

### 3. Dunbar's objections to NHTSA's discovery responses

Dunbar admitted that she received NHTSA's discovery responses, but she has repeatedly failed to provide specific objections to those responses and ignored this court's directive that she do so. Accordingly, Dunbar shall provide specific written objections to the responses no later than May 1, 2023 or waive her right to do so. It is not sufficient to object that the responses are "overbroad," "not responsive," "vague," or "woefully insufficient and non-responsive." Dunbar must provide detailed explanations for her objections.

### 4. Dunbar's email addresses, telephone numbers and responses to NHTSA's emails

The court is unpersuaded by and weary of Dunbar's confusing and inconsistent explanations for constantly changing her email addresses and telephone numbers, as well as her

unresponsive responses to NHTSA's emails. Accordingly, to the extent Dunbar communicates with counsel for NHTSA via email, she shall use a single email address and, if available, a single telephone number. *See Emp. L. Grp., P.C. v. San Diego Emp. L. Grp.*, No. 20-CV-1852 (JDB), 2021 WL 3931872, at *4 (D.D.C. Sept. 2, 2021) ("At the very least, litigants may not force their opponents to play email whack-a-mole in order to carry on the day-to-day business of adversarial litigation."). Except where documented good cause exists, Dunbar shall respond within forty-eight hours, via email, to NHTSA's emails and she may not insist that the parties communicate via telephone or insist that they meet in-person.[3]

5.  **Evidentiary submissions**

Going forward, the court will not consider email excerpts, such as those submitted by Dunbar at ECF No. 79.

6.  **Request for Appointment of Counsel**

Dunbar asks this court to appoint *pro bono* counsel to represent her in this action. Title VII allows a plaintiff to apply for appointment of counsel but does not obligate the court to order such an appointment. *See Poindexter v. Fed. Bureau Investigation,* 737 F.2d 1173, 1183 (D.C. Cir. 1984) (citation omitted). Instead, the statute provides that appointments may be made "in such circumstances as the court may deem just." 42 U.S.C. § 2000e-5(f)(1). Interpreting this provision, the D.C. Circuit has explained that the district court should consider the "following factors: (1) the ability of the plaintiff to afford an attorney; (2) the merits of the plaintiff's case; (3) the efforts of the plaintiff to secure counsel; and (4) the capacity of the plaintiff to present the case adequately without aid of counsel." *Poindexter*, 737 F.2d at 1185. However, "there will

---

[3] Dunbar is reminded that new defense counsel, Sam Escher, has entered an appearance for NHTSA, and she may not ignore communications from Escher or his office.

also be cases in which an analysis of one of the factors . . . will be dispositive, obviating the need for consideration of the other factors." *Id*. at 1185 n.27.  More importantly, "this list is not necessarily exclusive" and the Circuit did "not foreclose the possibility that a case might arise in which a district court could properly consider somewhat different factors." *Id*. at 1185 & n.27.

In this district, appointment of counsel from the Civil Pro Bono Panel is available to *pro se* plaintiffs who are proceeding *in forma pauperis*.  *See* LCvR 83.11(b)(3).  Dunbar did not file this case *in forma pauperis*, and even if she qualified for *in forma pauperis* status, a decision on whether to appoint counsel "must take into account the nature and complexity of the action, the potential merit of the *pro se* party's claims, the demonstrated inability of the *pro se* party to retain counsel by other means, and the degree to which the interests of justice will be served by appointment of counsel." *Plummer v. District of Columbia*, No. CIV.A.07-1161 (RMU), 2008 WL 3972183, at *2 (D.D.C. Aug. 27, 2008); LCvR 83.11(b)(3).

Having considered these standards, the court finds that appointment in this case is not "just," 42 U.S.C. § 2000e-5(f)(1), and would not serve the interest of justice, 42 U.S.C. § 2000e-5(f)(1).  Substantial questions exist about whether an attorney could adequately prosecute Dunbar's case given her continued failure to comply with court orders, failure to timely respond to communications, failure to respond to reasonable requests from opposing counsel, as well as her reliance on unspecific and cryptic explanations to explain her inability to reliably communicate.  The court is not convinced that Dunbar would sufficiently and promptly cooperate with appointed counsel and this court must take into consideration the limited resources of this court to provide *pro bono* counsel.

### 7. Trial date

Dunbar's request for a trial date is premature, as she has not yet fulfilled her discovery obligations, nor have the parties engaged in a final round of dispositive briefing.

### C.

Consistent with the above rulings, the court will issue accompanying orders. Any failure to fully comply with the orders of the court, as well as any failure to comply with the court's local rules or the Federal Rules of Civil Procedure may result in sanctions, up to and including dismissal of this action <u>with prejudice</u> for failure to prosecute and for failure to comply with court orders. *See* LCvR 83.23; Fed. R. Civ. P. 37(b). "The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of [her] failure to prosecute cannot seriously be doubted." *Link v. Wabash R. Co.*, 370 U.S. 626, 629 (1962). "Since our system favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success." *Trakas v. Quality Brands, Inc.*, 759 F.2d 185, 186-87 (D.C. Cir. 1985) (citations omitted). Here, given the history of Dunbar's refusals to follow this court's orders as well as the local and Federal rules, it is unclear what "less dire alternative" might prove effective. *See id.*

Date: March 31, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge