UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NADRA DUNBAR**, <br><br> Plaintiff, <br><br> v. <br><br> **SEAN DUFFY**, <br> Secretary of Transportation[1], <br><br> Defendant. | Civil Action No. 13-cv-872 |

## MEMORANDUM OPINION

From 2005 to 2014, *pro se* Plaintiff Nadra Dunbar worked for the National Highway Traffic Safety Administration ("NHTSA"). She worked in Human Resources, supervised by Darlene Peoples. Part of Plaintiff's job was to facilitate the agency's training plans and sessions. In 2012, unhappy with Plaintiff's performance, Peoples reassigned her to drafting workforce plans, and in 2014, Plaintiff was terminated. Plaintiff claims that Peoples's actions as well as her termination were in retaliation for her participation in her then-coworker's Equal Employment Opportunity investigation against Peoples.

Defendant now moves for summary judgment. Def.'s Mot. for Summ. J. and Mem. In Supp. Thereof at 1–20, ECF No. 130 ("Def.'s Mot."). For the reasons below, the court will GRANT Defendant's motion.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the court has updated the caption in this Memorandum Opinion to reflect the current Secretary of Transportation Sean Duffy.

I.  **BACKGROUND**

    A. **Factual Background**

In 2005, Plaintiff began working for Defendant as a Human Resources Specialist in the Office of Human Resources. Def.'s Stmt. of Material Facts Not in Disp. ¶ 1, ECF No. 130-1 ("Def.'s SUF"); Pl.'s Resp. to Def. Stmt. of Undisp. Facts ¶ 1, ECF No. 135 ("Pl.'s SUF"); *see* Third Am. Compl. ¶ 35, ECF No. 39 ("Third Am. Compl."). In that role, Plaintiff drafted and implemented annual training plans, managed an annual training budget, worked with the agency's training council, and hired vendors to perform training sessions. Def.'s SUF ¶ 2; Pl.'s SUF ¶ 2.

In 2010, Peoples began to express concern regarding Plaintiff's performance and management of the training program. Def.'s SUF ¶ 4. That September, Peoples eliminated Plaintiff's team leader duties. *Id.* ¶ 5; Pl.'s SUF ¶ 5. Later, in an annual performance review meeting, Peoples relayed to Plaintiff her concerns about her work performance, warning her that if her performance did not improve, she would receive an "Achieved Results" rating on her next appraisal. Def.'s SUF ¶ 6.

The record indicates that despite this warning, Defendant continued to have problems with Plaintiff's performance, alleging that Plaintiff submitted the 2011 fiscal year training plan late with mathematical errors. *Id.* ¶ 9; Pl.'s SUF ¶ 9. Plaintiff's government purchase card, used to hire training sessions vendors, was suspended because of her delinquent payment approvals. Def.'s SUF ¶ 10; Pl.'s SUF ¶ 10.

Meanwhile, on April 18, 2011, Plaintiff provided statements in support of a co-worker's informal complaint of discrimination against Peoples. Def.'s SUF ¶ 11. A few months later, in August, Peoples conducted Plaintiff's performance review that she had discussed with her in 2010. *Id.* ¶ 13; Pl.'s SUF ¶ 13. As Peoples had warned, she rated Plaintiff's performance as "Achieved Results," two steps lower than the highest rating, based on Plaintiff's untimely work on the FY

2011 training plan, problems working with the training council, and mismanagement and suspension of her purchase card. Def.'s SUF ¶ 13. Plaintiff alleges that later that month, on August 24, Peoples directed her to split the Training and Development Division work with another coworker, Tamika Robinson. *Id.* ¶ 14; Pl.'s SUF ¶ 14; *see* Third Am. Compl. ¶¶ 38–39.

In 2012, Plaintiff's work challenges continued. She failed to complete the fiscal year 2012 training plan on time. Def.'s SUF ¶ 16; Pl.'s SUF ¶ 16 (stating that she cannot admit or dispute). The training council also expressed concerns about its ability to work with Plaintiff. Def.'s SUF ¶ 17; Pl.'s SUF ¶ 17 (stating that she cannot admit or dispute). On April 6, Peoples reassigned Plaintiff from her position as Training Officer, with an office, to drafting workplans in a cubicle. Def.'s SUF ¶¶ 20–21.

After Plaintiff was reassigned, problems continued. Plaintiff was tasked with updating the 2008-2012 workplace plan, *id.* ¶¶ 26–27; Pl.'s SUF ¶¶ 26–27, but between June 2013 and February 2014, she made multiple requests to her coworker for data to complete the plan. Def.'s. ¶ 27; Pl.'s SUF ¶ 27. She also sent multiple emails to Peoples claiming that the workforce plan was complete, without incorporating Peoples's edits. Def.'s SUF ¶¶ 25–26; Pl.'s SUF ¶ 26. On at least one occasion, in December 2013, Defendant's security gate records indicated that she did not use her identification badge to enter the building, but her time and attendance record stated that she was at work. Def.'s SUF ¶¶ 28–30; *see* Pl.'s SUF ¶¶ 29–30.

In 2014, Plaintiff began to complain about alleged computer tampering, directing several questions to NHTSA's technology department. Def.'s SUF ¶¶ 31–32. Peoples instructed Plaintiff to stop doing so, and to only contact the Information Technology department if her computer was inoperable, but Plaintiff persisted. *Id.* ¶ 33. In April 2014, Plaintiff submitted a work deliverable

entitled "NHTSA Strategic Workforce Planning Toolkit," which closely resembled another document created by the U.S. Geological Survey. *Id.* ¶ 34.

On May 14, 2014, Peoples proposed terminating Plaintiff based on insubordination, making false statements, intentional misrepresentation, unprofessional behavior, and failure to follow instructions. *See id.* ¶ 35; Pl.'s SUF ¶ 35. Peoples also placed Plaintiff on administrative leave. *Id.* On July 10, 2014, an NHTSA official, Nathanial Beuse, upheld Peoples's decision, and Plaintiff was terminated on July 18, 2014. Def.'s SUF ¶ 36; Pl.'s SUF ¶ 36.

### B. Procedural History

Plaintiff filed her first formal Equal Employment Opportunity ("EEO") complaint in 2011, alleging that she was subject to a hostile work environment in retaliation for participating as a witness in her coworker's EEO case. Def.'s ¶ 15; *see* Def.'s Ex. J, Correspondence from Office of Civil Rights to Dunbar (Nov. 22, 2011, and Dec. 13, 2011), at 1–4, ECF No. 130-12 ("Def.'s Ex. J"). Plaintiff filed her second EEO complaint on April 6, 2012, alleging that she was subject to a hostile work environment in retaliation for participating in her coworker's EEO case as well as for filing her own EEO complaint. Def.'s SUF ¶ 20; *see* Def.'s Ex. J at 1–4. She later amended her second EEO complaint to allege that her reassignment from her position as a Training Officer was in retaliation for her prior participation in EEO activities. Def.'s Ex. LL, Mem. from Dunbar to Wright at 1, ECF No. 130-40 ("Ex. LL"). On May 28, 2013, the Equal Employment Opportunity Commission ("EEOC") entered summary judgment for NHTSA on Plaintiff's EEO claims, finding no discrimination based on retaliation. Def.'s Ex. MM, Final EEOC Order at 15, ECF No. 130-41 ("Ex. MM").

Plaintiff filed suit in this case on June 6, 2013, alleging (1) retaliation/reprisal, (2) hostile work environment, and (3) disparate treatment. *See* Compl. at 16, ECF No. 1. Her Complaint included the allegations contained in her EEO complaints. *Id.* at 1, 17. On December 13, 2013,

Plaintiff amended her complaint to add the Secretary of Transportation as a Defendant. *See* First Am. Compl. at 2, ECF No. 5 ("Am. Compl."). On March 13, 2014, Defendant moved to dismiss, or in the alternative, for summary judgment. Def.'s Mot. Dismiss at 1–23, ECF No. 12. Meanwhile, Plaintiff moved for leave to file a second amended complaint. Pl.'s Mot. Amend Compl., ECF No. 27. On April 23, 2015, the court granted Defendants' motion to dismiss as to Defendants Anna P. Williams and Darlene F. Peoples, denied as moot Plaintiff's motion to file a Second Amended Complaint, and instructed Plaintiff to file a Third Amended Complaint by April 30, 2015. Apr. 23, 2015 Min. Order.

Plaintiff filed a Third Amended Complaint alleging retaliation, hostile work environment, and disparate treatment under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16 and 42 U.S.C. § 1981, as well as whistleblower retaliation and other claims related to her termination. Third Am. Compl. ¶¶ 1, 64, 102, 104, 111. On September 9, 2015, Defendant renewed its motion to dismiss. Def.'s Mot. to Dismiss and Mem. In Support at 1–21, ECF No. 42-1.

On April 8, 2016, the Merit Systems Protection Board ("MSPB") affirmed Plaintiff's termination on grounds of insubordination, making false statements, misrepresentation, workplace disruption, unprofessional behavior, and failure to follow instructions. *See* Def.'s Ex. NN, *Dunbar v. Dep't of Transp.*, No. DC-0752-14-1003-I-1 (Apr. 8, 2016), at 1–21, ECF No. 130-42 ("Ex. NN"). On November 15, 2016, the MSPB remanded Plaintiff's appeal for a supplemental hearing upon finding that the Administrative Judge abused her discretion by precluding Plaintiff from introducing evidence on her affirmative defenses as a sanction for Plaintiff's discovery abuses. *See* Def.'s Ex. OO, Remand Order, *Dunbar v. Dep't of Transp.*, No. DC-0752-14-1003-I-1 (Nov. 15, 2016), ¶¶ 12–14, ECF No. 130-43 ("Ex. OO"). The remand order stated that after the supplemental hearing, if the "administrative judge finds that the appellant has failed to prove any

of these [affirmative defenses], she may adopt the findings from her first initial decision as to the charges, nexus, and the reasonableness of the penalty." *Id.* ¶ 15.

On March 31, 2017, this court granted Defendant's Motion to Dismiss Plaintiff's "Whistleblower Protection Act Claim and all of Plaintiff's pre-termination retaliation claims, except for those associated with her: (1) August 2011 'Achieved Results/Meets Expectations' performance evaluation; (2) August 2011 'dilution' of duties; and (3) April 2012 transfer of duties and relocation away from other HR personnel." *Dunbar v. Foxx*, 246 F. Supp. 3d 401, 421 (D.D.C. 2017) (citation omitted). This court also dismissed *sua sponte* Plaintiff's Title VII disparate treatment claim and her Section 1981 claim, *id.*, and denied Defendant's motion to dismiss Plaintiff's claims for hostile work environment and retaliation. *Id.* at 417, 419.

After reopening discovery and following a supplemental hearing on Plaintiff's affirmative defenses, the MSPB issued a second initial decision on July 17, 2017, affirming Plaintiff's removal and finding that she had failed to prove any of her affirmative defenses. *See* Def.'s Ex. PP, *Dunbar v. Dept. of Transp.*, No. DC-0752-14-1003-B-1, at 18–22 (July 17, 2017), ECF No. 130-44 ("Ex. PP"). On December 6, 2022, the MSPB issued a final order affirming the Administrative Judge's decision. *See* Def.'s Ex. QQ, *Dunbar v. Dept. of Transp.*, No. DC-0752-14-1003-B-1, at 1–7 (Dec. 6, 2022), ECF No. 130-45 ("Ex. QQ").

On January 5, 2023, Plaintiff petitioned the EEOC to review the MSPB's final order. Def.'s Ex. RR, EEOC Decision (June 5, 2023), at 1, ECF No. 130-46 ("Ex. RR"). On June 5, 2023, the EEOC issued an opinion concurring with the MSPB's final order finding no discrimination. *Id.* at 4.

## II. LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is no genuine disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine disputed issue of material fact exists, the court must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### III.  ANALYSIS

#### A. Retaliation

Plaintiff claims that Defendant retaliated against her by giving her an "achieved results/meets expectations" rating in her 2011 performance appraisal, diluting her duties after an August 2011 meeting, reassigning her from her position as NHTSA's Training Officer in April 2012 and relocating her to a cubicle, and ultimately firing her. Third Am. Compl. ¶¶ 29, 39, 53, 67. Defendant argues that dismissal of each claim is warranted because Plaintiff either failed to establish a prima facie case, or failed to establish a pretext for Defendant's otherwise nondiscriminatory justifications. Def.'s Mot. at 12–15.

A plaintiff bears the burden of proving a prima facie case of retaliation by showing that (1) she engaged in statutorily protected activity, (2) her employer was aware of the activity, (3) she suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the materially adverse employment action. *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 50 (D.D.C. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see McGill v. Munoz*, 203 F.3d 843, 846 n. 5 (D.C. Cir. 2000). When alleging circumstantial evidence of retaliation, a plaintiff may rely on the "familiar burden-shifting framework of *McDonnell Douglas*." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). If an employer presents evidence of legitimate non-retaliatory reasons for its actions, "the 'central question' becomes whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory [or non-retaliatory] reason was not the actual

reason and that the employer intentionally discriminated [or retaliated] against the employee." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (alterations in original) (quoting *Brady v. Off. of Sargent at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)).

    i.    **"Achieved Results" Performance Ranting**

Plaintiff claims that her 2011 "achieved results" rating was unwarranted and was in retaliation for supporting her coworker's EEO complaint. *See* Third Am. Compl. ¶ 33; Def.'s Ex. JJ, Dunbar Dep. at 27:3–28:17, ECF No. 130-38 ("Ex. JJ"). Defendant argues that none of Plaintiff's allegations about the rating raise a pretextual inference of discrimination. Def.'s Mot. at 13–14. The court agrees.

Peoples testified in the MSPB hearing that Plaintiff's rating was the result of her late training plan, her problems working with the training council, and her purchase card being suspended due to late payments. *See* Def.'s Ex. D, MSPB Hr'g Tr. at 175:8–176:17, ECF No. 130-6 ("Ex. D"); Def.'s SUF ¶¶ 7–10. The record shows that Peoples warned Plaintiff in 2010 about her inadequate work performance and told her she would receive an "achieved results" rating if she did not improve. Ex. D at 166:13–167:7. In 2011, Peoples sent Plaintiff numerous emails explaining how her work was unsatisfactory. *See* Def.'s Ex. H, Email from Peoples to Dunbar (July 21, 2011), at 1–5, ECF No. 130-10 ("Ex. H") (expressing concern as to why the blank purchase agreement to provide training services was cancelled and questioning why she was not consulted before the cancellation); Def.'s Ex. F, Email and Attachment from Atkins to Dunbar, (Feb. 25, 2011), at 2–3, ECF No. 130-8 ("Ex. F") (pointing out lack of detail in FY 2011 training budget and errors in Plaintiff's funding tables). Although Plaintiff testified in her deposition that People's criticism of her work was groundless, Ex. JJ at 27:3–28:17, there is "no evidence to suggest" that Peoples's justifications were invalid or pretextual. *Mason v. Geithner*, 811 F. Supp.

2d 128, 179 (D.D.C. 2011), *aff'd*, 492 F. App'x 122 (D.C. Cir. 2012). The court therefore finds that summary judgment is appropriate on Plaintiff's retaliation claims as they relate to her 2011 performance rating.

### ii.     Equal Work Assignment

Next, Plaintiff contends that Defendant retaliated against her in 2011 when Peoples directed Plaintiff to split her work duties with her co-worker Robinson. Def.'s Ex. A, Dunbar Dep. 234:16–235:12 (Oct. 12, 2012), ECF No. 130-3 ("Ex. A"); Third Am. Compl. ¶ 78. Defendant disputes whether Peoples directed Plaintiff to split her work with Robinson, but argues that regardless, "Robinson's and Plaintiff's duties did not actually change," and therefore Plaintiff did not suffer an adverse employment action. Def.'s Mot. at 12.

Plaintiff's contention is undercut by the record, which reflects that when asked during an EEO investigation if Plaintiff's duties were "equally divided" with her own, Robinson responded "[n]o." Def.'s Ex. I, Robinson EEO Decl., at 4, ECF No. 130-11 ("Ex. I"). Plaintiff's work was "different" than Robinson's, because Plaintiff's duties were "more strategic" and Robinson's were "more administrative." *Id.* Robinson also stated that, "[d]espite the fact that," Peoples "did direct us to split the duties equally," her "duties remain[ed] administrative in nature." *Id.*

A retaliation claim requires that a plaintiff suffer an adverse action, which can include "reassignment with significantly different responsibilities." *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (internal quotation marks and citation omitted). There is no evidence in the record to indicate that Plaintiff had significantly different responsibilities because she split duties

with Robinson, and thus the court will also grant Defendant summary judgment on Plaintiff's 2011 retaliation claim.

### iii. Reassignment

Plaintiff argues that her reassignment from a Training Officer to a Human Resources Specialist was retaliatory because it was "unmerited" and "not substantiated." *See* Ex. JJ at 68:23–71:8. But that allegation falls short of raising a pretextual inference that Defendant's otherwise nondiscriminatory reasons were illegitimate. Defendant included the specific reasons for Plaintiff's reassignment in a memorandum. Ex. O, Reassignment Memo., at 1–3, ECF No. 130-17 ("Ex. O"). Peoples wrote that Plaintiff was being reassigned because she did "not share vital information/documentation" with the Training Council, did not "consider" the Council's input, and did not "effectively manage[]" the Training Program. *Id.* at 1. The memo continued: "The fact that two separate Councils over the past four years, comprised of different individuals have been consistent in their complaints regarding your administration of NHTSA's Training Program supports your inability to effectively work with them." *Id.* Because Plaintiff did not submit evidence to establish that People's reasons were pretextual, the court finds that summary judgment is appropriate on Plaintiff's retaliation claims as it relates to her reassignment.

### iv. Cubicle Assignment

Plaintiff claims that Defendant retaliated against her by moving her workspace to a cubicle as part of her job reassignment, rather than permitting her to keep her office. *See* Pl.'s Opp'n at 13; Ex. D at 204:19–205:14; Third Am. Compl. ¶¶ 79–80. Changing an employee's workspace can be an adverse action. *Weber v. Hurtgen*, 297 F. Supp. 2d 58, 68 (D.D.C. 2003), *aff'd in part, rev'd in part and remanded*, *Weber v. Battista*, 494 F.3d 179 (D.C. Cir. 2007) (finding that while a change in office space could be an adverse employment action, being moved to an office with

one less window was not an adverse employment action because it did not "drastic[ally]" affect the plaintiff's terms and conditions of employment). But Peoples testified at the MSPB hearing that Plaintiff's duties did not require an office and that the new Training Officer also was not assigned one. Ex. D at 204:19–205:14. Plaintiff does not point to any evidence from which a reasonable jury could find that her cubicle reassignment was in retaliation for her protected activity. Summary judgment is thus appropriate for this retaliation theory as well.

> v.   **Federal Service Removal**

Finally, Plaintiff contends that Defendant fired her either in retaliation for her participation in her co-worker's EEO complaint against Peoples, or because of her own EEO complaint against Peoples. Third Am. Compl. ¶¶ 81–82. Defendant argues that Plaintiff was fired for "insubordination, making false statements, intentional misrepresentation, workplace disruption, unprofessional conduct, and failure to follow instructions in the notice removing her from federal service." Def.'s Mot. at 15; Ex. FF, Correspondence from Peoples to Dunbar (May 14, 2014), at 1–9, ECF No. 130-34 ("Ex. FF"). Defendant argues that the events undergirding Plaintiff's termination reasons are largely undisputed. Def.'s Mot. at 15. Plaintiff testified at her deposition that each of the reasons included in her termination notice was false but has not proffered or pointed to any evidence in the record to support her denial. Ex. JJ at 143:10–144:4. Again, the court finds that Plaintiff fails to show that Defendant's reasons were a pretext for retaliation.

First, Plaintiff admits that she did not make the corrections to the 2008-2012 workforce plan as Peoples requested, which was the conduct charged as insubordination in the notice of proposed removal. *See* Ex. R, MSPB Hr'g Tr. at 183:16–185:16, ECF No. 130-46 ("Ex. R"). Second, Plaintiff provides no evidence that she was at work on November 12, 2013, or December 16, 2013—the dates Defendant accuses her of not being at work. *Compare* Ex. R at 186:15–190:5

(Plaintiff testifying that she may have used a temporary badge to enter NHTSA headquarters), *with* Ex. Y, Dunbar Dep. at 53:22–63:9 (Plaintiff stating that she may have been teleworking); *see also* Def.'s SUF ¶¶ 28–29. Third, Plaintiff emailed Peoples attempting to take credit for work she had not done. *See* Ex. R at 192:21–197:2; Ex. EE, Email from Dunbar to Peoples, at 1–2 (stating that Plaintiff had designed, developed, and created the "NHTSA Strategic Workforce Planning Toolkit"); *but see* Def.'s SUF ¶ 34 (showing that the document closely resembled a document created by the U.S. Geological Survey). In addition, although Peoples told Plaintiff to cease contacting technology staff unless her computer was inoperable, and to refrain from copying parties outside NSTSA's Human Resources office, Plaintiff disregarded the instruction—and was therefore charged with failure to follow instructions. Def.'s SUF ¶ 33.

Plaintiff admitted that she repeatedly contacted the Information Technology department about her computer—which the Chief Information Officer corroborated in her testimony at Plaintiff's administrative hearing. Ex. R at 97:5–99:11. At her administrative hearing, Plaintiff also admitted to not making corrections, as Peoples requested, to her 2008-2012 workforce plan— the very basis for her charge of unprofessional conduct. *See id.* at 183:16–185:16.

Moreover, the temporal proximity between Plaintiff's EEO activity and Defendant's supposed retaliatory activity does not save Plaintiff's complaint. More than three months passed between Plaintiffs' EEO activity and Defendant's challenged actions—and courts have repeatedly found that generally, the protected activity must occur no more than three months from the date of the adverse action complained of to establish causation. *See McIntyre v. Peters*, 460 F. Supp. 2d 125, 133 (D.D.C. 2006) (stating that "[t]his Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone."); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

In sum, as the administrative judge found, Plaintiff failed to proffer any evidence to establish pretext for each justification Defendant included in its termination letter.  *See* Ex. PP at 18–22.  Summary judgment is appropriate for Defendant on each of Plaintiff's retaliation claims.

### B. Hostile Work Environment

In support of her hostile work environment claim, Plaintiff points to several incidents: her participation in her coworker's EEO complaint against Peoples; her affidavit in support of that Complaint, her own EEO complaints against Peoples, Peoples's splitting her role with another co-worker, her lower performance reviews, and the length of her MPSB appeal.  Pl.'s Opp'n at 7–9.  Defendant argues, however, that:

> "[t]he events that Plaintiff bases her hostile work environment claim on involve legitimate supervisory oversight that was neither severe, nor offensive, nor pervasive. To the extent that Plaintiff relies on her reassignment from her position as Training Officer, her move to a cubicle, and her removal from federal service to further her hostile work environment claims, these are discrete, disparate acts that do not support a hostile work environment claim."

Def.'s Mot. at 20.

The court agrees with Defendant and will grant summary judgment on this claim.

"[A] plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)) (citations omitted).  To determine whether a hostile work environment exists, courts should consider "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Id*.  Plaintiff cannot satisfy this standard, because none of the acts that she alleges, whether considered alone or

cumulatively, meets "the demanding standards" for a hostile work environment claim. *Sewell v. Chao*, 532 F. Supp. 2d 126, 141–42 (D.D.C. 2008).

For one, Plaintiff repeats nearly every allegedly retaliatory incident to support her hostile work environment claim. *See supra* at 8–12. "[A]cts giving rise to a hostile work environment claim must collectively meet the independent requirements of that claim." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011); *Keeley v. Small*, 391 F. Supp. 2d 30, 51 (D.D.C. 2005) (When a plaintiff's allegedly "hostile" events "are the very employment actions he claims are retaliatory[,] he cannot so easily bootstrap alleged retaliatory incidents into a broader hostile work environment claim."). "Discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim[.]" *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003). "[T]he dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claim are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and the kinds of harm each cause of action was designed to address." *Rattigan v. Gonzales,* 503 F. Supp. 2d 56, 82 (D.D.C. 2007) (internal quotation marks and citation omitted).

For another, even if the court permitted Plaintiff's bootstrapping, her hostile work environment arguments are "common workplace grievances." *Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009). Repeated conflicts with a supervisor "do[] not demonstrate a hostile work environment[.]" *Id.* Just because Plaintiff and her supervisor had differing views regarding the quality of Plaintiff's work product, and the methods Peoples took to address it, does not elevate those incidents to the level of severity sufficient to support a hostile work environment claim. *See Kline v. Berry*, 404 F. App'x 505, 506 (D.C. Cir. 2010) ("[P]etty slights are not a reason for this court to "engage in 'judicial micromanagement of business practices' by second-guessing

employers' decisions. (internal quotation marks and citation omitted)); *Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 848–49 (D.C. Cir. 2001) (finding supervisor's "nasty attitude" insufficient to establish a hostile work environment); *Johnson v. Bolden*, 699 F. Supp. 2d 295, 302 (D.D.C. 2010), *aff'd*, 492 F. App'x 118 (D.C. Cir. 2012) (dismissing hostile work environment claim where supervisor's tone was "negative," "harsh," "unkind," and "dismissive"). Consequently, Defendant is entitled to summary judgment on this claim.

## IV.  CONCLUSION

For the foregoing reasons, the court will GRANT Defendant's Motion for Summary Judgment. A corresponding order will follow shortly.

Date: March 31, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge